Indira J. Cameron-Banks (Cal. Bar No. 248634)
  *Indira@CameronJones.law*
Terrence M. Jones (Cal. Bar No. 256603)
  *Terrence@CameronJones.law*
CAMERON | JONES LLP
  6737 Bright Avenue, Suite B6
  Whittier, California 90601
  (213) 863-4490 | www.CameronJones.law

Attorneys for Plaintiffs
JANE DOE and JOHN DOE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual; and JOHN DOE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> THE RITZ-CARLTON HOTEL COMPANY, L.L.C., a Delaware limited liability company; MARRIOTT INTERNATIONAL, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. CV23-5218 <br><br> **COMPLAINT FOR DAMAGES** <br><br> **First Cause of Action** <br> Sexual Assault <br> (Cal. Civ. Code § 1708.5) <br><br> **Second Cause of Action** <br> Intentional Infliction of Emotional Distress <br><br> **Third Cause of Action** <br> Negligence <br><br> **Fourth Cause of Action** <br> Loss of Consortium <br><br> **Demand for Jury Trial** |

COMES NOW Plaintiffs Jane Doe and John Doe (collectively, "Plaintiffs"), who bring this Complaint for Damages and Demand for Jury Trial ("Complaint"), rested upon this Court's diversity jurisdiction, against Defendant The Ritz-Carlton Hotel Company, L.L.C. (the "Ritz-Carlton" or the "Ritz"), a Delaware limited liability company corporation with its principal place of business in Maryland, Defendant Marriott International, Inc. ("Marriott" or "Marriott International"), a Delaware corporation with its principal place of business in Maryland, and Does 1-10, inclusive (collectively, "Defendants"), alleging, based upon information and belief, the following with respect to Defendants' identities and conduct:

## I.

## NATURE OF THE CASE

1.      In November 2022, Jane and John Doe, a married couple, booked a room at The Ritz-Carlton Hotel, Half Moon Bay, located about 20 miles outside of San Francisco.  The couple booked the Ritz-Carlton for what they assumed would be a restful and indulgent weekend stay to celebrate Jane Doe's birthday and to visit their daughter who had attended a nearby university.

2.      When Jane and John Doe checked in to the Half Moon Bay resort, they were greeted with the kind of comfort and seduction one would expect from one of the most well-known and well-regarded luxury hotel brands in the world. But by the time Jane and John Doe checked out of the Ritz-Carlton, they took with them the horror and trauma of having been sexually assaulted and exploited as a direct consequence of the hotel's own negligence.

3.      Unbeknownst to Jane and John Doe, one the hotel's employees ejaculated his semen into a Ritz-Carlton labeled water bottle, delivered it to Jane and John Doe's room, and Jane Doe then drank the semen-contaminated water before she realized it had been defiled by a criminal deviant and that she had been sexually assaulted.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

4.     Once Jane Doe realized that the taste and texture of the water she had ingested may have been semen, she and her husband immediately contacted Ritz-Carlton management as well as the local police.

5.     But the Ritz-Carlton has refused to accept responsibility and hold itself accountable for what one of its employees did to prey on Jane Doe—and, more likely than not, countless other unsuspecting hotel guests.

6.     The Ritz-Carlton subsequently sent the water bottle to a laboratory for analysis, and the testing did, in fact, confirm that the water contained semen as Jane and John Doe had reported to local police and to hotel management.  But the Ritz-Carlton then declined to cooperate further.  The Ritz-Carlton refused to cooperate with law enforcement's investigation to identify and apprehend the assailant, and refused to compensate Jane and John Doe for the sexual assault beyond offering them a few measly Marriott rewards points—which, of course, could only be used for another anxiety-inducing stay at a Ritz-Carlton property.

7.     The Ritz-Carlton was plainly negligent:  negligent in its hiring of sexual deviants to work at its properties, where people bathe and sleep; negligent in its facilitation of criminal background checks of its employees to ensure the hotel was not hiring sexual predators; and negligent in its inspection and handling of the hotel-branded food and beverage products it packages, bottles, and serves to its guests.

8.     And the Ritz-Carlton and Marriott have been utterly derelict in their duty to investigate this sexual assault.  Plainly, they have no interest in identifying the predator and protecting other hotel guests from what is likely ongoing deviance by their own employee, because they have declined to cooperate with the police detectives conducting the law enforcement investigation.  The Ritz-Carlton will not turn over the defiled water bottle so that law enforcement authorities can conduct their own analysis of that evidence; will not turn over a copy of the test results such that the DNA can be cross-referenced against sex-offender registries and

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

other law enforcement databases; and will not disclose the identities of the hotel employees on duty that day so that their backgrounds and criminal histories can be scrutinized.

9.     So, at present, the Ritz-Carlton employee that ejaculated his semen into a hotel-labeled water bottle and then served it to Jane Doe—and likely countless other guests—remains unidentified, uncaptured, and his ongoing sexual deviance unabated.

10.    This lawsuit seeks to redress the emotional harm Jane and John Doe suffered as a direct and proximate cause of the Ritz-Carlton's and Marriott's negligence.

## II.

### JURISDICTION, VENUE & DIVISIONAL ASSIGNMENT

11.    This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  As set forth below, each Plaintiff is diverse from each Defendant in this litigation and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

12.    The Court has personal jurisdiction over Defendant The Ritz-Carlton Hotel Company, L.L.C. in that, at all times material to the allegations of this Complaint, such entity did, and continues to do, substantial business within the State of California and within the Northern District of California.

13.    The Court has personal jurisdiction over Defendant Marriott International, Inc. in that, at all times material to the allegations of this Complaint, such entity did, and continues to do, substantial business within the State of California and within the Northern District of California.

14.    At all times material to the allegations of this Complaint, Jane and John Doe lived together in the State of Washington.

15.    Venue is proper in the Northern District of California pursuant to

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

28 U.S.C. § 1391(b)(2) in that a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred within this judicial district, namely, within San Mateo County in which the The Ritz Carlton, Half Moon Bay is situated.

16.     Assignment to this Division is proper, consistent with Civil L.R. 3-2(c), in that a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within San Mateo County.

## III.

## PARTIES & RELEVANT NON-PARTIES

17.     Plaintiff Jane Doe is an individual who currently is, and was at all times material to the allegations of this Complaint, domiciled in the State of Washington with the intention of permanently residing therein.

18.     Plaintiff John Doe is an individual who currently is, and was at all times material to the allegations of this Complaint, domiciled in the State of Washington with the intention of permanently residing therein.

19.     Plaintiffs Jane Doe and John Doe are sexual assault victims and, thus, identified herein by the pseudonyms "Jane Doe" and "John Doe" to protect their true identities.  The Ninth Circuit permits the use of pseudonyms in cases where, as here, concealing a party's identity is necessary to protect that party from "harassment, injury, ridicule, or personal embarrassment."  United States v. Doe, 655 F.2d 920, 922 n. 1 (9th Cir. 1981); Does I thru XXIII v. Advanced Textile, 214 F.3d 1058, 1068 (9th Cir. 2000); accord Doe v. Blue Cross & Blue Shield United of Wisc., 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses").  To be sure, "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes."  Doe No. 2 v. Kolko, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); see also Doe v. Evans, 202 F.R.D. 173, 176 (E.D. Pa.

4

2001) (granting anonymity to sexual assault victim); Doe v Penzato, Case No. CV10-5154-MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011).

20.     Plaintiffs are informed and believe, and on that basis allege, that The Ritz-Carlton Hotel Company, LLC is a Limited Liability Company organized under the laws of the State of Delaware with a principal place of business situated in Bethesda, Maryland, and was so at all times material to the allegations of this Complaint.  Plaintiffs are informed and believe, and on that basis allege, that The Ritz-Carlton Hotel Company, LLC is an American company that, generally, operates, franchises, and licenses lodging establishments domestically and internationally, including hotel, residential and timeshare properties.  Moreover, Plaintiffs are informed and believe, and on that basis allege, that none of the members of Ritz-Carlton Limited Liability Company is a citizen of the State of Washington nor has its principal place of business situated there.

21.     The Ritz-Carlton is one of the most well-known luxury hotel brands in the travel, leisure, and hospitality industry, boasting more than 100 hotels and resorts, including conventional hotels, private clubs, for-sale residences, private sanctuaries, and yachts.

22.     The Ritz-Carlton owns and operates a multitude of hotels, resorts, and properties within the State of California, including within this judicial district; to wit, The Ritz-Carlton, Half Moon Bay, where Plaintiffs were injured.

23.     Plaintiffs are informed and believe, and on that basis allege, that Marriott International, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business situated in Bethesda, Maryland, and was so at all times material to the allegations of this Complaint.  Plaintiff is further informed and believes, and on that basis alleges, that Marriott International is American company that, generally, operates, franchises, and licenses lodging establishments domestically and internationally, including hotel, residential and timeshare properties.

5

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

24.    Marriott International is one of the largest hotel companies in the travel, leisure, and hospitality industry, boasting 31 brands and 8,500+ properties across 138 countries and territories.  Among the brands within the Marriott International portfolio—and, thus, owned, operated, and directed by Marriott—is The Ritz-Carlton Hotel Company, LLC, one of its subsidiaries.

25.    Marriott International owns and operates a multitude of hotels, resorts, and properties within the State of California, including within this judicial district; to wit, The Ritz-Carlton, Half Moon Bay, where Plaintiffs were injured.

26.    Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendants, and each of them, were acting as the agent, servant, employee, subsidiary, joint venturer, affiliate, partner, assignee, successor-in-interest, alter ego or other representative of each other, and were acting within the course and scope of their agency, servitude, employment, subsidy, joint venture, affiliation, partnership, assignment, succession, alter ego, and/or representation, with the full knowledge, consent, permission, authorization and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.

27.    Plaintiffs are ignorant of the true names and capacities of the defendants sued as DOES 1 through 10, inclusive (the "DOE Defendants") and, therefore, sue these DOE Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

28.    Plaintiffs are informed and believe, and based thereon allege, that the DOE Defendants acted wrongfully, maliciously, intentionally, and negligently; that each is responsible in some manner for the events and happenings complained of herein; and that Plaintiffs' injuries, as alleged herein, were proximately caused by the DOE Defendants, either through each Defendant's own conduct or through the conduct of their agents and/or employees.

29.    Plaintiffs are informed and believe, and based thereon allege, that at

6

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

all times material to the allegations of this Complaint, each of the Defendants, whether named or fictitiously named as a DOE Defendant, were the merging entity, merged entity, subsidiary, acquiring corporation, agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and/or employment with knowledge, advice, permission and consent of each other.

30.    As used herein, the term "Defendants" means all Defendants, both jointly and severally, and references by name to any one Defendant shall include and reference all Defendants, both individual, corporate, and business entities, both specifically named and unnamed, and both jointly and severally to all.

31.    Plaintiffs are informed and believe, and based thereon allege, that at all times material to the allegations of this Complaint, Defendants caused, aided, abetted, facilitated, encouraged, authorized, permitted and/or ratified the wrongful acts and omissions described in this Complaint.

## IV.

## FACTUAL ALLEGATIONS

32.    Jane Doe works is a homemaker and John Doe works in marketing. The couple has been married for 25 years and have 3 children.

33.    At present, and at all times material to the allegations of this Complaint, Jane and John Doe lived and worked in the State of Washington.

34.    Jane and John Doe are frequent travelers, both for business and pleasure, and have long been loyal customers of Marriott branded hotels, including its Ritz-Carlton properties.

35.    At all times material to the allegations of this Complaint, Jane and John Doe have been Marriott reward-points holders and would estimate that they have spent at least 600 nights in Marriott-branded hotels during their lifetime, including at its Ritz-Carlton properties.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

36.    In the Fall of 2022, Jane and John Doe booked a 4-night stay at The Ritz-Carlton Hotel, Half Moon Bay, for the weekend of November 18, 2022.  It was Jane Doe's birthday that weekend and the couple intended to celebrate her special day at a special place.  Also, one of the couple's children had attended a nearby university and they planned to stay at the Ritz-Carlton while visiting their child during the weekend and Thanksgiving holiday week.

37.    Jane and John Doe had stayed at the Half Moon Bay Ritz-Carlton before and never had any issues with safety or security, or any other issues relating to the hotel's service and accommodations.

38.    Like many hotel and lodging establishments, the Ritz-Carlton provides complimentary bottles of water to its guests.  However, the Ritz-Carlton is unique in that it provides guests with actual Ritz-Carlton-branded water bottles. That is, rather than simply providing guests with water bottles it might buy in bulk from a third party like Evian, Fiji, or the like, the Ritz-Carlton provides guests with water bottles labeled with the hotel's own logo:

 

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

39. On the evening of November 18, 2022, Jane and John Doe returned to their Half Moon Bay hotel room following dinner and realized that they had run out of drinking water for the balance of the night. Jane Doe, thus, called the front desk and asked if they could send someone to their room with some water, to which the front desk attendant agreed.

40. Moments later, a male Ritz-Carlton employee knocked on the couple's door and handed Jane Doe at least 5 bottles of Ritz-Carlton labeled water.

41. Jane Doe had no reason to suspect that the water bottles had been tampered with and defiled, so placed them on her nightstand and ultimately went to bed.

42. Later that night, Jane Doe woke up thirsty and grabbed one of the water bottles that had been brought to them by the Ritz-Carlton employee. She opened it, took a drink, and knew immediately that something was wrong with the liquid she had just swallowed.

43. Jane Doe then woke up her husband and told him that she believed she had ingested some kind of chemically-contaminated water. John Doe could see the look of concern on his wife's face and hear the fear in her voice, so knew something was seriously wrong. After calling hotel security, Jane Doe got dressed and went down to the front desk with security representatives to bring it to the attention of hotel management.

44. As Jane Doe was addressing the issue with the hotel security and management representatives on duty, she began to realize that the chemical taste she had experienced was similar to semen. Jane Doe was mortified, terrified, embarrassed, and humiliated, but shared her suspicion with her husband, who then asked the hotel security and management representatives to call the police.

45. John Doe also asked the hotel management representative on duty to preserve and secure the subject water bottle so that an internal investigation could be conducted by Ritz-Carlton as well as an external investigation by law

9

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

enforcement. The hotel management representative agreed and locked the subject water bottle in a hotel office.

46.    Ultimately, a law enforcement officer from the San Mateo County Sheriff's Department did arrive at the hotel and took statements from Jane and John Doe as well as from the hotel management representative as part of his initial investigation.

47.    Jane and John Doe ultimately left the property without any resolution or answers with respect to precisely what Jane Doe had ingested.

48.    Still, as Jane Doe thought about it more, she became more confident that the taste of the liquid in the Ritz-Carlton water bottle that she experienced was indeed semen.

49.    In the days and weeks following their departure from the property, Jane and John Doe remained in contact with representatives from the Ritz-Carlton regarding the status and outcome of its testing of the fluid in the subject water bottle—namely, with a Marriott International claims adjustor named Jim Schramm.

50.    Unfortunately, on or about January 12, 2023, Jane Doe's suspicions about the substance she had ingested were validated when that same Marriott claims adjustor, Jim Schramm, confirmed to John Doe over the phone that, yes, the lab tests had revealed that the fluid in the water bottle had been defiled with semen.

51.    Again, Jane Doe was mortified, terrified, embarrassed, and humiliated by confirmation of what she had suspected since that very night.  Without her knowledge, and obviously without her will and consent, Jane Doe had ingested the semen of some unknown deviant.  She had been sexually assaulted and exploited by a man employed by the Ritz-Carlton and Marriott International.  Jane Doe was at the same time furious and ashamed of having been sexually violated in that manner.

52.    And Jane Doe was terrified.  She did not know what kind of germs and infections that could have been present in the semen she ingested, and so, has

10

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

since then had to routinely seek medical testing for potential viruses.

53.     Moreover, given the trauma of being victimized, Jane Doe has sought therapy because of the distress associated with knowing what occurred to her, and yet, at the same time not knowing what may befall her in the future if she ultimately tests positive for some kind of sexually-transmitted virus.

54.     John Doe, too, has been emotionally distressed by the attack on his wife.  As he was powerless to stop an assault on his wife by some deviant whose sexual proclivity was forcing people to drink the semen of a man who was not their partner or spouse.  John Doe has been frustrated by thoughts of his inability to protect his wife, particularly from sexual assault, and the incident has negatively impacted their intimacy and the emotional depth of their relationship.

55.     To make matters worse, the Ritz-Carlton and Marriott International have refused to provide Jane and John Doe with a copy of the actual lab results for the subject water bottle so that they can share them with their own medical providers.

56.     Furthermore, the Ritz-Carlton and Marriott International have refused to cooperate with law enforcement authorities' effort to investigate the sexual assault and apprehend the assailant—most importantly, so that other hotel guests and members of the public at large will not also be victimized by what is likely ongoing deviance by one of their employees.

57.     John Doe took the card of the officer that responded to the hotel that night and has been an intermittent contact with him to try to obtain updates about the status of the criminal investigation concerning the water bottle.  However, according to the officer, the law enforcement investigation has been stalled because the Ritz-Carlton and Marriott International have refused to turn over the defiled water bottle.  Consequently, law enforcement authorities have been precluded from conducting their own analysis of that evidence, and precluded from cross-referencing the DNA against sex offender registries and other law

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

enforcement databases. The Ritz-Carlton and Marriott International have also refused to disclose the identities of the hotel employees on duty that day so that their backgrounds and criminal histories can be scrutinized.

58.     So, at present, the Ritz-Carlton employee that ejaculated his semen into a hotel-labeled water bottle and then served it to Jane Doe—and likely countless other guests—remains unidentified, uncaptured, and his ongoing sexual deviance unabated.

## V.
## CAUSES OF ACTION

### First Cause of Action
### Sexual Battery
### Pursuant to Civil Code § 1708.5
### (Brought by Plaintiff Jane Doe as Against Each Defendant)

59.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint, above, and repeat, reiterate, and reallege each and every allegation contained therein with the same force and effect as if such paragraphs were set forth fully at length here.

60.     Section 1708.5 of the California Civil Code defines the intentional acts that constitute sexual battery under the law and provides that a "person who commits a sexual battery upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages" Cal. Civ. Code § 1708.5(b).

61.     Plaintiffs are informed and believe, and thereupon allege, that at all times herein relevant, the individual who ejaculated his semen into the water bottle from which Jane Doe drank, as described in detail above, was an employee of Defendant Ritz-Carlton or Defendant Marriott International, or both, or was

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

otherwise acting at the direction and under the supervision of such Defendants' employees with the authority to control such individual's tasks and activities. At all relevant times, such individual was acting within the course and scope of their employment by Defendant Ritz-Carlton or Defendant Marriott International, or both, or otherwise acting within the course and scope of their contractual relationship with Defendant Ritz-Carlton or Defendant Marriott International, or both.

62.    As averred in the preceding paragraphs of this Complaint, such employee of Defendant Ritz-Carlton or Defendant Marriott International, or both, subjected Jane Doe to sexual assault and battery by causing her person to be touched by the employee's ejaculated semen, as described in detail above, on or about November 18, 2022. The employee's harmful conduct, as described in detail above, was unprovoked, unwanted, and nonconsensual.

63.    Jane Doe did not consent to the aforesaid contact with such employee's ejaculated semen and Jane Doe's personal dignity was offended by such conduct, thereby constituting sexual battery.

64.    The actions of such employee, as described in detail above, were unwelcomed, unwanted, and uninvited by Jane Doe; were severe and pervasive; and affected Jane Doe's emotional well-being.

65.    As a proximate result of the wrongful acts of Defendants' employee, Plaintiff has been harmed in that Plaintiff has suffered, and will continue to suffer, actual, consequential, and incidental financial losses, including, without limitation, loss of income, salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount according to proof at the time of trial.

66.    As a direct, foreseeable, and proximate result of the wrongful acts of Defendants' employee, Plaintiff has suffered, and continues to suffer, substantial losses of earnings and employment benefits, and has suffered humiliation,

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

embarrassment, mental and emotional distress and discomfort, all to Plaintiff's damage in an amount proven at trial.

67.    Plaintiff is informed and believes, and on that basis alleges, that the aforesaid acts directed toward Plaintiff by Defendants' employee were carried out with a conscious disregard of Plaintiff's right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiff to punitive damages from Defendants in an amount appropriate to punish and set an example of them.

**Second Cause of Action**

**Intentional Infliction of Emotional Distress**

**(Brought by Each Plaintiff as Against Each Defendant)**

68.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint, above, and repeat, reiterate, and reallege each and every allegation contained therein with the same force and effect as if such paragraphs were set forth fully at length here.

69.    "A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Hughes v. Pair, 46 Cal. 4th 1035 (Cal. 2009).

70.    Plaintiffs are informed and believe, and thereupon allege, that at all times herein relevant, the individual who ejaculated his semen into the water bottle from which Jane Doe drank, as described in detail above, was an employee of Defendant Ritz-Carlton or Defendant Marriott International, or both, or was otherwise acting at the direction and under the supervision of such Defendants'

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

employees with the authority to control such individual's tasks and activities.  At all relevant times, such individual was acting within the course and scope of their employment by Defendant Ritz-Carlton or Defendant Marriott International, or both, or otherwise acting within the course and scope of their contractual relationship with Defendant Ritz-Carlton or Defendant Marriott International, or both.

71.    The conduct of Defendants' employee, as described in detail above—ejaculating his semen into a water bottle from which he intended Jane Doe and/or John Doe to drink and to be witnessed by their spouse—goes beyond all possible bounds of decency of that usually tolerated in a civilized community, particularly when directed toward another person as a means of sexually objectifying and demeaning them.  Such employee's  conduct toward Jane Doe and John Doe was intended to inflict severe emotional distress upon each of them.

72.    Defendants' employee devoted little or no thought to the probable distress such acts would cause Jane and John Doe, and each of them, and simply acted in reckless disregard to the possibility that Plaintiffs would suffer severe emotional distress as a result of such acts.

73.    The actions of Defendants' employee did, in fact, cause Jane Doe and John Doe to each suffer, among other emotions, anguish, nervousness, anxiety, grief, worry, shock, humiliation, and embarrassment.  The distress was of such severity that no reasonable person in a civilized society should be expected to bear the same.

74.    The actions of Defendants' employee subjected Jane Doe and John Doe to cruel and unjust hardship.  Defendants' employee acted with malice in that such employees' actions were intended to injure Plaintiffs, and did injure each of them, and because such despicable acts were carried out with a willful disregard for Plaintiffs' legal rights and personal wellbeing.

75.    The actions of such employee, as described in detail above, were

15

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

unwelcomed, unwanted, and uninvited by Jane Doe and John Doe; were severe and pervasive; and affected Jane Doe's and John Doe's emotional well-being.

76.     As a proximate result of the wrongful acts of Defendants' employee, Plaintiffs have been harmed in that Plaintiffs have suffered, and will continue to suffer, actual, consequential, and incidental financial losses, including, without limitation, loss of income, salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiffs' field and damage to Plaintiffs' professional reputation, all in an amount according to proof at the time of trial.

77.     As a direct, foreseeable, and proximate result of the wrongful acts of Defendants' employee, Plaintiffs have suffered, and continue to suffer, substantial losses of earnings and employment benefits, and have suffered humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiffs' damages in an amount proven at trial.

78.     Plaintiffs are informed and believe, and on that basis allege, that the aforesaid acts directed toward Plaintiffs by Defendants' employee were carried out with a conscious disregard of Plaintiffs' rights to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiffs to punitive damages from Defendants in an amount appropriate to punish and set an example of them.

## Third Cause of Action

### Negligence

### (Brought by Each Plaintiff as Against Each Defendant)

79.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint, above, and repeat, reiterate, and reallege each and every allegation contained therein with the same force and effect as if such paragraphs were set

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

forth fully at length here.

80.     As described above, Jane Doe and John Doe were each placed under unreasonable physical and emotional distress by Defendants as a consequence of their employee's conduct of ejaculating his semen into a water bottle from which he intended Jane Doe and/or John Doe to drink and to be witnessed by their spouse—on November 18, 2022, as described in detail above.

81.     Plaintiffs are informed and believe, and thereupon allege, that at all times herein relevant, the individual who ejaculated his semen into the water bottle from which Jane Doe drank, as described in detail above, was an employee of Defendant Ritz-Carlton or Defendant Marriott International, or both, or was otherwise acting at the direction and under the supervision of such Defendants' employees with the authority to control such individual's tasks and activities.  At all relevant times, such individual was acting within the course and scope of their employment by Defendant Ritz-Carlton or Defendant Marriott International, or both, or otherwise acting within the course and scope of their contractual relationship with Defendant Ritz-Carlton or Defendant Marriott International, or both.

82.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, Defendants owed a duty of care to all reasonably foreseeable people, particularly as patrons of their hotel, resort, and dining premises to operate such premises in a reasonably safe manner.

83.     At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, undertook to provide security services and keep the premises in a state consistent with the due regard for the safety of the premises' patrons and invitees, including Plaintiffs.

84.     At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, undertook to provide safe food and beverage services and keep the premises in a state consistent with the due regard

17

for the safety of the premises' patrons and invitees, including Plaintiffs.

85.     At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, owed a duty to its patrons, invitees, and the general public to exercise reasonable care to keep and maintain the premises in a condition reasonably safe for use by patrons, invitees, and the public. In particular, Defendants, and each of them, had a duty to take such precautions as were reasonably necessary to protect the premises' patrons and invitees from criminal sexual attacks which were and/or, in the exercise of reasonable care, should have been reasonably foreseeable.

86.     Furthermore, Defendants, and each of them, had a duty to take such precautions as were reasonably necessary to protect the premises' patrons and invitees from food and beverages that had been tampered with, spoiled, defiled, and contaminated which were and/or, in the exercise of reasonable care, should have been reasonably foreseeable.

87.     At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, knew, or in the exercise of reasonable care, should have known that it employed criminals and sexual deviants on its premises, that there had been numerous criminal acts and sexual attacks perpetrated on patrons, invitees, and the public on its premises, and that criminal acts and sexual attacks were reasonably likely to be perpetrated on patrons, invitees, and the public on the premises unless Defendants, and each of them, took reasonable and proper steps to provide adequate security at the premises.

88.     At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, knew, or in the exercise of reasonable care, should have known that it was serving food and beverages that had been tampered with, spoiled, defiled, and contaminated; that patrons, invitees, and the public on its premises had reported to Defendants the same; and that such tampering, spoliation, defilement, and contamination was likely to reoccur unless

18

Defendants, and each of them, took reasonable and proper steps to provide adequate food and beverage safety, security, cleanliness, and preservation at the premises.

89.    At all material times, Defendants, and each of them, knew, or in the exercise of reasonable care, should have known, on account of the personal and criminal backgrounds of the employees it hired to work on the premises, and on account of the nature and frequency of crime on the premises, that said premises constituted a dangerous and hazardous area for its patrons, invitees, and the public, of which Defendants were in a superior position to appreciate such hazards and take necessary steps to prevent harm to the patrons, patrons' guests, invitees, and the general public including the Plaintiffs.

90.    At all material times, Defendants, and each of them, knew, or in the exercise of reasonable care, should have known, on account of the personal, professional, and criminal backgrounds of the employees it hired to work on the premises, and on account of the nature and frequency of food and beverage tampering, spoliation, defilement, and contamination at the premises, that said premises constituted a dangerous and hazardous area for its patrons, invitees, and the public, of which Defendants were in a superior position to appreciate such hazards and take necessary steps to prevent harm to the patrons, patrons' guests, invitees, and the general public including the Plaintiffs.

91.    At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, knew, or in the exercise of reasonable care, should have known, that no individual had it within their power to take the measures necessary to provide for their own safety and security within/on the premises.

92.    At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, were in a superior position to appreciate such danger and to take the steps necessary to deter and prevent such criminal acts

19

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

and sexual attacks on the premises.

93.    At all material times, Defendants, and each of them, through their officers, agents, servants, and employees, were in a superior position to appreciate such danger and to take the steps necessary to deter and prevent food and beverage tampering, spoliation, defilement, and contamination on the premises.

94.    As a result of the allegations set forth above, at all material times, the criminal act and sexual attack on Jane Doe and John Doe was reasonably foreseeable to Defendants, and each of them, who were in a superior position to appreciate such hazards and take necessary steps to prevent harm to the premises' patrons, patrons' guests, invitees, and the general public including the Plaintiffs.

95.    At the above-mentioned time and place, Defendant Ritz-Carlton or Defendant Marriott International, or both, did itself, and/or by and through its agents, servants, and employees, breach its duty to each Plaintiff to exercise reasonable care for the safety and protection of the patrons, patrons' guests, invitees, and the general public of the premises, including each Plaintiff, and acted in a careless and negligent manner in various respects including, but not limited to the following acts or omissions:

(a)    Failing to have security guards/officers on the premises during relevant hours;

(b)    Failing to have an adequate amount of security guards/officers on the premises during relevant hours;

(c)    Failing to warn the residents and invitees of the premises, including Plaintiffs, of the nature and character of the premises and its immediate vicinity when Defendants knew or, in the exercise of reasonable care, should have known that many criminal incidents against persons and property had occurred on and around the premises;

(d)    Failing to take reasonable measures that would guard against

20

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

and otherwise deter the conduct of criminal activity on the premises and in failing to be proactive in the prevention of crimes on the premises and against its residents and invitees;

(e) Failing to inspect and evaluate the premises for dangerous conditions and security deficiencies;

(f) Failing to implement reasonable monitoring devices such as working surveillance cameras on, and around, the interior and exterior of the premises;

(g) Failing to create, implement, distribute, and/or enforce reasonable security policies, security measures, and security procedures necessary to protect the residents, invitees, and the general public of the premises;

(h) Failing to create and/or implement a reasonable security plan which would meet the known industry standards and customs for safety in the community;

(i) Failing to take reasonable precautionary measures to deter and prevent violent crime upon the premises, in light of the history of violent crime, at the premises;

(j) Failing to police, patrol, guard, deter, and otherwise provide adequate protection for the residents and invitees of the premises, when Defendants knew or, in the exercise of reasonable care, should have known of foreseeable criminal acts;

(k) Failing to have an adequate number of security guards at the premises to protect patrons, patrons' guests, invitees, and the general public of the premises, including Plaintiffs;

(l) Failing to hire and/or retain competent security guards to protect patrons, patrons' guests, invitees, and the general public

21

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

of the premises, including Plaintiffs;

(m) Failing to properly train security guards to be reasonably skillful, competent, and/or qualified to exercise appropriate and proper security measures so that they could protect patrons, patrons' guests, invitees, and the general public of the premises, including Plaintiffs;

(n) Failing to adequately and properly implement and/or execute a plan to patrol the premises;

(o) Failing to implement or operate adequate access control to the community;

(p) Failing to inspect and evaluate the premises for serving food and beverages that had been tampered with, spoiled, defiled, and contaminated;

(q) Failing to create, implement, distribute, and/or enforce reasonable food and beverage safety policies, security measures, and inspection procedures necessary to protect the residents, invitees, and the general public of the premises;

(r) Failing to create and/or implement a reasonable food and beverage safety and security plan which would meet the known industry standards and customs for safety in the community;

(s) Failing to have an adequate number of food and beverage safety inspectors at the premises to protect patrons, patrons' guests, invitees, and the general public of the premises, including Plaintiffs.

96. At all material times, Defendant Ritz-Carlton or Defendant Marriott International, or both, was on notice or, in the exercise of reasonable care, should have been on notice of sexually-deviant criminal activity as is evidenced by prior crimes and misconduct at the premises and within its immediate vicinity.

22

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

97. At all material times, Defendant Ritz-Carlton or Defendant Marriott International, or both, did foresee or, in the exercise of reasonable care, should have foreseen the likelihood of sexually-deviant criminal activity on the premises as is evidenced by prior crime and misconduct on and around the premises.

98. At all material times, Defendant Ritz-Carlton or Defendant Marriott International, or both, through its agents and employees, negligently failed to have any procedures governing the inspection, supervision, and/or security of the premises where the subject incident occurred; or, in the alternative:

(a) Defendant Ritz-Carlton or Defendant Marriott International, or both, through its agents and employees, did have procedures governing the inspection, supervision, and security of the area where the subject incident occurred; however, Defendant Ritz-Carlton or Defendant Marriott International, or both, negligently and carelessly failed to implement said procedures; or, in the alternative;

(b) Defendant Ritz-Carlton or Defendant Marriott International, or both, through its agents and employees, did have procedures governing the inspection, supervision, and security of the area where the subject incident occurred, but implemented the same in a careless and negligent manner.

99. At all material times, Defendant Ritz-Carlton or Defendant Marriott International, or both, through its agents and employees, created and/or allowed to be created said dangerous conditions as stated above on the premises. Defendant Ritz-Carlton or Defendant Marriott International, or both, failed to warn patrons, patrons' guests, invitees, and the general public of the premises, including Plaintiffs, of the existence of said dangerous condition; or, in the alternative, did allow said dangerous condition to exist for a length of time sufficient in which a reasonable inspection would have revealed the same.

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

100.   The negligence of Defendant Ritz-Carlton or Defendant Marriott International, or both, proximately caused the assault on Jane Doe and concomitant harm to John Doe, in that:

        (a)   There was inadequate and/or nonexistent visible deterrence to prevent the criminal assault;

        (b)   There was inadequate and/or nonexistent physical deterrence to prevent the above-described sexually-deviant criminal assault;

101.   Criminals and deviant could carry out such assaults on Defendants' premises, and the premises Defendants undertook to secure, without fear of being caught, discovered, and/or prosecuted; and,

102.   An atmosphere was created at Defendants' premises, and the premises Defendants undertook to secure, which facilitated the commission of sexually-deviant crimes against persons.

103.   Plaintiffs are informed and believe, and on that basis allege, that Defendants' said careless, negligent, reckless and unlawful conduct, as described in detail above, was the direct, legal and proximate cause of the injuries and damages sustained by Plaintiffs as herein alleged.

104.   The aforementioned subject incident—that is, the conduct of Defendants' employee ejaculating his semen into a water bottle from which he intended Jane Doe and/or John Doe to drink and to be witnessed by their spouse—caused Plaintiffs to suffer various traumatic injuries.  As a legal, direct, and proximate result of the conduct of Defendants, Plaintiffs suffered physical injuries, mental anguish, terror, and anxiety.

105.   Plaintiffs are further informed and believe, and on that basis allege, that Defendants were assisting, facilitating, encouraging, and otherwise condoning its employee's negligent and reckless conduct, and, as such, are liable for such negligent and reckless behavior.

106.   Plaintiffs are informed and believe, and on that basis allege, that at all

24

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

times mentioned herein, Defendants and Does 1 through 10, inclusive, acted carelessly, negligently, recklessly and with conscious disregard for the welfare and safety of others, including Plaintiffs, so as to legally and proximately cause their injuries.

107.    As a proximate result of the wrongful acts of Defendants' employee, Plaintiffs have been harmed in that Plaintiffs have suffered, and will continue to suffer, actual, consequential, and incidental financial losses, including, without limitation, loss of income, salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiffs' field and damage to Plaintiffs' professional reputation, all in an amount according to proof at the time of trial.

108.    As a direct, foreseeable, and proximate result of the wrongful acts of Defendants' employee, Plaintiffs have suffered, and continue to suffer, substantial losses of earnings and employment benefits, and have suffered humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiffs' damages in an amount proven at trial.

## Fourth Cause of Action

### Loss of Consortium

### (Brought by Plaintiff John Doe As Against Each Defendant)

109.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint, above, and repeat, reiterate, and reallege each and every allegation contained therein with the same force and effect as if such paragraphs were set forth fully at length here.

110.    Plaintiff Jane Doe and Plaintiff John Doe were lawfully married at all times relevant to this action, and remain lawfully married as husband and wife today.

111.    As alleged above, and as a result of the conduct of the Defendants,

25

Plaintiff Jane Doe sustained severe and permanent injuries and damages.

112.   As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff Jane Doe's spouse, Plaintiff John Doe, Plaintiff John Doe has been deprived, continues to be deprived, and expects to be deprived in the future, of his spouse's companionship, affection, love, sexual relations, conjugal fellowship, physical assistance in maintaining the family home and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff John Doe to suffer depression, emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

113.   As a further direct and proximate result of the aforesaid conduct of defendants, and each of them, Plaintiff John Doe has sustained a loss of consortium, love, society, comfort, and affection with respect to his spouse and has thereby sustained pecuniary loss in a sum within the jurisdictional limits of the Court, which will be stated according to proof at trial.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial to resolve each and every one of the claims averred in this Complaint against each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as to each of the Causes of Action set forth herein, for each such category of damages set forth therein, only to the extent provided by law, according to proof, as follows:

**On the First Cause of Action for Sexual Battery (Cal. Civ. Code § 1708.5):**

1.   For actual and money damages in an amount according to proof at trial;

26

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

2. For compensatory and emotional distress damages;

3. For punitive and exemplary damages (only to the extent provided by law);

4. For Plaintiff's reasonable attorneys' fees (only to the extent provided by law);

5. For Plaintiff's reasonable experts' fees (only to the extent provided by law);

6. For an award of prejudgment interest;

7. For such other relief as the Court deems just and proper.

**On the Second Cause of Action for Intentional Infliction of Emotional Distress:**

1. For actual and money damages in an amount according to proof at trial;

2. For compensatory and emotional distress damages;

3. For punitive and exemplary damages (only to the extent provided by law);

4. For Plaintiff's reasonable attorneys' fees (only to the extent provided by law);

5. For Plaintiff's reasonable experts' fees (only to the extent provided by law);

6. For an award of prejudgment interest;

7. For such other relief as the Court deems just and proper.

**On the Third Cause of Action for Negligence:**

1. For actual and money damages;

2. For compensatory and emotional distress damages;

3. For punitive and exemplary damages (only to the extent provided by law);

4. For Plaintiff's reasonable attorneys' fees

27

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

(only to the extent provided by law);

5.      For Plaintiff's reasonable experts' fees

(only to the extent provided by law);

6.      For an award of prejudgment interest;

7.      For such other relief as the Court deems just and proper.


**On the Fourth Cause of Action for Loss of Consortium**

1.      For actual and money damages in an amount according to proof at trial;

2.      For compensatory and emotional distress damages;

3.      For punitive and exemplary damages

(only to the extent provided by law);

4.      For Plaintiff's reasonable attorneys' fees

(only to the extent provided by law);

5.      For Plaintiff's reasonable experts' fees

(only to the extent provided by law);

6.      For an award of prejudgment interest;

7.      For such other relief as the Court deems just and proper.


Dated:  October 12, 2023          CAMERON | JONES LLP
                                  Indira J. Cameron-Banks


                                  /s/ Terrence M. Jones

                                  Attorneys for Plaintiffs
                                  JANE DOE and JOHN DOE


28

COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL